UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DORRIS WAYNE TRAVIS,

       Petitioner,

v.                         Case No: 2:13-cv-359-FtM-29CM

SECRETARY, DOC and FLORIDA
ATTORNEY GENERAL,

       Respondents.[1]

_____

**ORDER**

This matter comes before the Court upon a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Dorris Wayne Travis ("Petitioner") who is presently confined at the South Florida Reception Center in Doral, Florida (Doc. 1, filed May 10, 2013). Petitioner, proceeding *pro se*, attacks a conviction entered by the Circuit Court in Lee County, Florida for second degree murder. Id. Respondent filed a response to the petition (Doc. 12; Doc. 13).

Upon due consideration of the pleadings and the state-court record, the Court concludes that Petitioner is not entitled to

---

[1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." Rumsfeld v. Padilla, 542 U.S. 426, 436 (2004)(citations omitted). In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

federal habeas relief.  Because the Court may resolve the Petition on the basis of the record, an evidentiary hearing is not warranted.  See Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## I.   Background

On October 1, 2004, Petitioner was charged by amended information with second degree murder in violation of Florida Statute § 782.04(2) (count one) and aggravated assault with a deadly weapon in violation of Florida Statute § 784.021 (count two) (Doc. 13-5 at 26-27).  After a jury trial, he was found guilty as charged on count one, and not guilty on count two. Id. at 29, 30.  Petitioner was sentenced to life in prison. Id. at 32.  His conviction and sentence were per curiam affirmed by Florida's Second District Court of Appeal ("DCA") (Doc. 13-1 at 104); Travis v. State, 959 So. 2d 734 (Fla. 2d DCA 2007).

Subsequently, Petitioner filed a motion pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") in which he raised a total of seventeen claims of ineffective assistance of trial counsel (Doc. 13-2 at 13).  The post-conviction court made findings regarding all but three of the claims and provided an opportunity for Petitioner to file an amended Rule 3.850 motion that adequately set forth the remaining

claims (Doc. 13-5 at 8).   Petitioner filed an amended Rule 3.850

motion (Doc. 13-6).   The post-conviction court entered an order

denying both of Petitioner's Rule 3.850 motions (Doc. 13-7 at 1).

Florida's Second DCA *per curiam* affirmed the post-conviction

court's denial (Doc. 13-7 at 103); Travis v. State, 121 So. 3d

1048 (Fla. 2d DCA 2012).

## II.  Governing Legal Principles

### A.   The Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be

granted with respect to a claim adjudicated on the merits in state

court unless the adjudication of the claim:

> (1)  resulted in a decision that was contrary to,
> or involved an unreasonable application of,
> clearly established Federal law, as determined
> by the Supreme Court of the United States; or

> (2)  resulted in a decision that was based on an
> unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).   This standard is both mandatory and difficult

to meet.   White v. Woodall, 134 S. Ct. 1697, 1702 (2014).   A state

court's summary rejection of a claim, even without explanation,

qualifies as an adjudication on the merits which warrants

deference.   Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir.

2008).   Notably, a state court's violation of state law is not

sufficient to show that a petitioner is in custody in violation of

the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Wilson v. Corcoran, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. White, 134 S. Ct. at 1702; Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." Marshall v. Rodgers, 133 S. Ct. 1446, 1449 (2013) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case. White, 134 S. Ct. at 1706 (quoting Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court

when faced with materially indistinguishable facts. <u>Ward v. Hall</u>, 592 F.3d 1144, 1155 (11th Cir. 2010); <u>Mitchell v. Esparza</u>, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, <u>Brown v. Payton</u>, 544 U.S. 133, 134 (2005); <u>Bottoson v. Moore</u>, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Bottoson</u>, 234 F.3d at 531 (quoting <u>Williams</u>, 529 U.S. at 406). The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>White</u>, 134 S. Ct. at 1702 (quoting <u>Harrington v. Richter</u>, 562 U.S. 86 (2011)). Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." <u>Knowles</u>, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue

made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) ("a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding") (dictum); Burt v. Titlow, 134 S. Ct. 10, 15-16 (2013) (same).

**B.  Ineffective Assistance of Counsel**

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984).  A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense.  Id.  This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. Burt, 134 S. Ct. at 13 (citing Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89.  In reviewing counsel's performance, a court

must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. At 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

**C.   Exhaustion and Procedural Default**

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has

exhausted all means of available relief under state law. Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)
>>> (i)    there is an absence of available State corrective process; or
>>>
>>> (ii)   circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1) (2012).

Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995) (citing <u>Picard v. Connor</u>, 404 U.S. 270, 275-76 (1971)). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. <u>Snowden v. Singletary</u>, 135 F.3d 732 (11th Cir. 1998). In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the

petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims). Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman*, 501 U.S. at 750. If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. <u>Alderman v. Zant</u>, 22 F.3d 1541, 1549 (11th Cir. 1994).

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. "To establish cause for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999) (internal quotation marks omitted). To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. <u>Henderson v. Campbell</u>, 353 F.3d 880, 892 (11th Cir. 2003).

The second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" Murray v. Carrier, 477 U.S. 478, 479-80 (1986). Actual innocence means factual innocence, not legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327 (1995). In addition, "[t]o be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324).

## III. **Analysis**

### A.   **Claims One and Five[2]**

_____

[2] In Ground Four of the instant petition, Petitioner merely directs this Court to "Grounds Two through Eight, pages 3A through 3C and see Grounds Two through Eight, pages 4A through 4C." Petitioner does not number or further explain the claims (Doc. 1 at 17). It is unclear what Petitioner is raising in Ground Four of the instant petition. Respondent correctly notes that Petitioner's "references" are "confusing when comparing those claims as raised in State circuit court in his 3.850 Postconviction Motion and those raised upon appeal to the Second District Court of Appeal from the denial of his 3.850 Postconviction Motion, and as now set forth in his petition." (Doc. 12 at 32). Nonetheless, Respondent cogently responded to Petitioner's claims, and Petitioner has not objected to Respondent's attempt to label and enumerate the issues he raises. Accordingly, the Court will adopt Respondent's numbering system for the claims raised in Ground Four. To the extent Petitioner intended to assert different or additional claims, they are dismissed pursuant to Rule 2(c) of the Rules

In Claim One, Petitioner asserts that the trial court erred when it refused to give the "affray" jury instruction (Doc. 1 at 10).  Petitioner also asserts that the trial court failed to instruct the jury on Petitioner's statutory right to defend. Id. In Claim Five, Petitioner asserts that defense counsel was ineffective for failing to ensure that the "affray" jury instruction was given (Doc. 1 at 3).

Upon review of the record, it does not appear that Claim One has been presented to the state courts. As a prerequisite to federal habeas review, a petitioner must exhaust state court remedies, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)-(c).  A claim that a jury instruction is erroneous is "clearly a matter to be raised on direct appeal." Gary v. State, 775 So. 2d 335, 336 (Fla. 2d DCA 2000); Thompson v. State, 759 So. 2d 650, 665 (Fla. 2000) (recognizing that substantive challenges to jury instructions must be raised on direct appeal).  In his brief on direct appeal, Petitioner argued only that the state had not proven second degree murder and that the trial judge admitted "inherently prejudicial evidence." (Doc. 13-1 at 3).  Petitioner's brief did not mention the court's failure to read the affray instruction.  Petitioner has not demonstrated cause and prejudice for his failure to exhaust this claim on direct

---

Governing Section 2254 cases (stating that § 2254 petition must specify all grounds for relief in the petition and state the facts supporting each ground).

appeal; nor has he demonstrated the applicability of the actual innocence exception. Accordingly, Claim One is dismissed as unexhausted.

Petitioner did argue in his Rule 3.850 motion that trial counsel was ineffective for failing to request an instruction on the crime of affray. Petitioner asserted that "the Trial Court explicitly instructed the jurors that murder in the second-degree includes the lesser included crime of manslaughter, and aggravated battery was also given. 'Affray' was <u>not</u> given." (Doc. 13-2 at 26)(emphasis in original). Petitioner claimed entitlement to the instruction because the altercation which led to the victim's stabbing death was described as a "fight." <u>Id.</u> at 26-27. He claims to have suffered prejudice because "affray" only carries a sentence of one year in prison whereas second degree murder carries a maximum sentence of life. <u>Id.</u> at 26.

The post-conviction court denied Claim Five, noting that affray is not a lesser included offense of second degree murder:

> The Court notes that "lesser offenses 'are those in which the elements of the lesser offense are always subsumed within the greater, without regard to the charging document or evidence at trial.'" <u>Pizzo v. State</u>, 945 So. 2d 1203, 1206 (Fla. 2006) (quoting <u>State v. Florida</u>, 894 So. 2d 941, 947 (Fla. 2005)). Accordingly, the elements of an affray are 1) the fighting of two or more people in a public place, and (2) to the terror of the people. <u>See</u> <u>D.J. v. State</u>, 651 So. 2d 1255, 1256 (Fla. 1st DCA 1995). Accordingly, the elements of an affray cannot be subsumed within second degree murder. Consequently,

> an affray is not a lesser included offense of
> second degree murder. <u>See</u> Fla. Std. Jury
> Instr. Crim. 7.4.  Therefore, [Claim Five] is
> without merit.

(Doc. 13-5 at 14).  The post-conviction court's rejection of this claim was affirmed by Florida's Second DCA (Doc. 13-7 at 106).  A review of the record and applicable state law supports the state court's conclusions.

Under Florida law, affray is not a lesser included offense of second degree murder. One reason for this is that in an affray, two or more persons must fight, whereas a second degree murder may be committed by only one person. <u>See</u> <u>O.A. v. State</u>, 312 So. 2d 202, 203 (Fla. App. 1975) ("[I]t appears that assault and battery is a lesser include offense of an affray and not vice versa."); <u>Hickman v. State</u>, 996 A.2d 974, 982-83 (Md. App. 2010) ("[W]hile assault may be an element of an affray, an affray is not a form of common law assault or common law battery.  Although an indictment charging a common law affray is, in effect, also one for several assaults and batteries, there are significant differences between the offenses that make clear that an affray is a separate and distinct offense from common law assault and battery.") (citing <u>Carnley v. State</u>, 102 So. 333, 334 ( Fla. 1924)). Therefore, while the state may have had the *right* to charge Petitioner with an affray, it chose not to do so.  The prosecutor, not defense counsel or the trial court, has the sole discretion to charge and prosecute criminal acts. <u>State v. Greaux</u>, 977 So. 2d 614, 615 (Fla. 4th DCA

2008); <u>McArthur v. State</u>, 597 So. 2d 406 (Fla. 1st DCA 1992) ("[T]he decision to initiate criminal prosecutions for felonies rests with the state attorney[.]").   Defense counsel was not ineffective for failing to seek an additional charge against Petitioner.

Moreover, the jury found Petitioner guilty of second degree murder.   Presuming, as we must for federal habeas purposes, that the jury properly applied the law on second degree murder, the Court sees no logical basis to conclude that an additional charge would have led the jury down a different path.   A charge on affray would have changed neither the evidence nor the standard for a conviction on second degree murder, and consequently, would not have changed the outcome for Petitioner.   Although Petitioner urges that he may have been entitled to a jury pardon had the affray instruction been given (Doc. 1 at 11), <u>Strickland</u> forbids any inquiry into the possibility of such "lawless" and result-oriented modes of jury decision-making. <u>Strickland</u>, 466 U.S. at 694 ("In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law.").   Applying <u>Strickland</u>'s presumptions, the Court concludes that the addition of a new charge would not have changed a rational jury's decision.

Claim Five fails to satisfy either <u>Strickland</u> prong and is denied pursuant to 28 U.S.C. § 2254(d).

## B.   Claim Two

Petitioner asserts that the trial court erred by allowing the admission of hearsay evidence at his trial (Doc. 1 at 2-3, 13). Specifically, he argues that the physician who actually conducted the victim's autopsy, Dr. Douglas Kelley, did not testify at Petitioner's trial and that the testimony of the medical examiner who testified was, therefore, inadmissible hearsay. <u>Id.</u>

Petitioner argued in his Rule 3.850 motion that trial counsel was ineffective for failing to object to the testimony of Dr. Rebecca Hamilton on Confrontation Clause[3] grounds (Ex. 13-2 at 17). Although this is not the precise claim raised in the instant petition, in an abundance of caution, this Court will address the ineffectiveness claim raised in Petitioner's Rule 3.850 motion.[4]

---

[3] The Confrontation Clause of the Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. Accordingly, testimonial hearsay may not come into evidence without cross-examination of the declarant unless: (1) the declarant is unavailable; and (2) the declarant was subject to prior cross-examination on the hearsay. See <u>Bullcoming v. New Mexico</u>, 131 S. Ct. 2705 (2011) ("The accused's right is to be confronted with the analyst who made the certification, unless that analyst is unavailable at trial, and the accused had an opportunity, pretrial, to cross-examine that particular scientist.").

[4] A claim of trial court error on this ground was not presented to the state courts. Accordingly, any claim of trial court error in relation to the admission of the medical examiner's testimony

See Estelle v. Gamble, 429 U.S. 97, 106 (1976) (recognizing that s document filed *pro se* is to be liberally construed).  The post-conviction court denied this claim on the ground that Dr. Hamilton testified only to her own opinions and not to those of Dr. Kelley (Doc. 13-5 at 11-12).   Therefore, the post-conviction court concluded that counsel was not ineffective for failing to make a meritless objection. Id.  Florida's Second DCA *per curiam* affirmed (Doc. 13-7 at 106).   A review of the trial transcript and applicable Florida law supports the state court's conclusion.

At Petitioner's trial, Dr. Hamilton testified that she reviewed photographs taken from the scene of the crime as well as from the victim's autopsy (Doc. 13-5 at 104).   The photographs were introduced into evidence. Id. at 105, 107.  Counsel objected to the handwritten "arrows" on the photographs that had been placed there by Dr. Kelley. Id. at 108.   The state argued that the arrows only pointed to holes in the clothing and were not testimonial. Id.   The objection was overruled. Id.   Dr. Hamilton used the photographs and Dr. Kelley's autopsy report to show and describe two stab wounds on the victim. Id. at 109-110.  The first wound indicated that a knife had entered the victim's chest between two ribs and damaged his heart so badly that Dr. Hamilton opined that the injury would not have been survivable, even had a trauma

---

is unexhausted and subject to dismissal.  See discussion supra
Claim One.

surgeon been "right there." Id. at 109-112, 113.  She testified that a second knife wound showed that a knife had entered the victim's abdomen and pierced his liver and gall bladder.  Id. at 113-14. It was her opinion that the second wound could have been survivable had the victim received immediate medical treatment. Id. at 114.  Dr. Hamilton also testified as to the existence of several non-fatal wounds to the victim. Id. at 114-42.

In the instant case, Dr. Hamilton did not merely testify as to Dr. Kelley's conclusions regarding the victim's cause of death. Rather Dr. Hamilton testified that she reached her independent conclusions regarding the victim's cause of death by reviewing the autopsy and crime scene photographs and the autopsy report by Dr. Kelley.   Florida courts have consistently held that when a substitute examiner develops independent conclusions using objective evidence, a trial court may allow that examiner to testify. See Brennan v. State, 754 So. 2d 1, 4-5 (Fla. 1999); Capehart v. State, 583 So.2d 1009 (Fla. 1991) (finding admission of M.E.'s testimony proper even in absence of admitted autopsy report, where M.E. relied on the autopsy and toxicology reports, evidence receipts and photos, and all other proper documentation in the case); Linn v. Fossum, 946 So. 2d 1032, 1037 (Fla. 2006) ("The autopsy report, toxicology report, and photographs are clearly 'facts or data' reasonably relied on by experts in the field."); Banmah v. State, 87 So. 3d 101, 103 (Fla. 3d DCA 2012)

("[I]t is proper to permit a substitute medical expert to testify as to cause of death despite the fact that the expert did not perform the autopsy, when the substitute medical expert relies on the autopsy report."); compare United States v. Ignasiak, 667 F.3d 1217, 1231 (11th Cir. 2012)(concluding that autopsy reports admitted into evidence in conjunction with a substitute medical examiner's testimony where the substitute examiner did not personally observe or participate in the autopsy were testimonial).

Given the case law from the Florida courts regarding the admissibility of Dr. Hamilton's testimony, reasonable counsel could have concluded that any further Confrontation Clause objections would be futile.[5]  Accordingly, counsel's performance was not constitutionally ineffective, and Claim Two is denied pursuant to 28 U.S.C. § 2254(d).

**C.   Claims Three and Four**

Petitioner asserts that he was subjected to vindictive prosecution because the charge against him was increased from manslaughter to second degree murder after he failed to plead

---

[5] The Eleventh Circuit's conclusion in Ignasiak, was issued more than two years after Petitioner's trial, and could not have been relied upon by the trial court to sustain an objection to Dr. Hamilton's review of Dr. Kelley's autopsy reports. A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct[.]" Flores-Ortega, 528 U.S. at 477 (quoting Strickland, 466 U.S. at 690).

guilty (Doc. 1 at 14-15).  Petitioner raised this issue in his Rule 3.850 motion (Doc. 13-2 at 13).  The post-conviction court broke the claim into two parts: (1) a general claim of prosecutorial vindictiveness; and (2) a claim that counsel was ineffective for failing to pursue a claim of prosecutorial vindictiveness (Doc. 13-5 at 5).  This Court will label the claim of prosecutorial vindictiveness as Claim Three and the corresponding ineffectiveness claim as Claim Four.

The post-conviction court dismissed Claim Three as procedurally barred because "[c]laims of prosecutorial vindictiveness could have been, should have been, or perhaps were raised on direct appeal, and are therefore, procedurally barred." (Doc. 13-5 at 13) (citing Groover v. State, 489 So. 2d 15, 16 (Fla. 1986). The dismissal was *per curiam* affirmed by Florida's Second DCA (Doc. 13-7 at 106).

A petitioner requesting a federal court to issue a writ of habeas corpus must present his claims to the state courts in a procedurally correct manner. Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).  The procedurally correct way for Petitioner to raise a claim of prosecutorial vindictiveness in the Florida state courts is by direct appeal. See Groover v. Singletary, 656 So. 2d 424 (Fla. 1995) (claims of prosecutorial vindictiveness should be raised on direct appeal); Sampson v. State, 845 So.2d 271, 272 (Fla. 2d DCA 2003) (claims of trial court error should be

raised on direct appeal).  In Florida, a District Court of Appeal's *per curiam* affirmance of a circuit court's ruling explicitly based on procedural default "is a clear and express statement of its reliance on an independent and adequate state ground which bars consideration by the federal courts." Harmon v. Barton, 894 F.2d 1268, 1273 (11th Cir. 1990).  Because Petitioner failed to properly raise a claim of prosecutorial vindictiveness in appropriate state court proceedings, resulting in the application of a procedural bar by the state courts, the claim is likewise procedurally barred from review in this Court.  Petitioner has failed to demonstrate cause for not raising this claim in the state courts or actual prejudice resulting from the error of which he complains.  Therefore, he cannot overcome the bar, and Claim Three is dismissed as unexhausted and procedurally barred.

To the extent that Petitioner asserts counsel was constitutionally ineffective for failing to raise a claim of prosecutorial vindictiveness,[6] the claim fails.  Under Florida

---

[6] Upon review of Petitioner's Rule 3.850 motion, it appears that Petitioner asserted to the post-conviction court that counsel was ineffective for "failing to adequately argue and follow through" on a claim of prosecutorial vindictiveness (Doc. 13-2 at 21).  This Court will address this ineffectiveness claim to the extent it was raised in his Rule 3.850 motion.  However, any additional assertions raised in the instant petition that were not presented to the state court are unexhausted.  Petitioner does not raise cause and prejudice for his failure to raise these issues in state court; therefore, this Court will not consider the additional claims raised in Claim Four of Petitioner's federal habeas petition. See discussion supra Claim One.

law, it is "within the state attorney's discretion to prosecute less than fully when, in his determination, the ends of justice will be served." State v. Phillips, 642 So. 2d 18, 19 (Fla. 2d DCA 1994).  The United States Supreme Court has stated that "just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded." United States v. Goodwin, 457 U.S. 368, 378 (1982).  That is exactly what occurred in this case.

Although Petitioner urges that counsel should have argued that Blackledge v. Perry, 417 U.S. 21, 28-29 (1974) supported his claim for prosecutorial vindictiveness, Blackledge did not deal with a *pre-trial* decision by the prosecution.  As noted by the Supreme Court subsequent to Blackledge:

> A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct. As we made clear in Bordenkircher, the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.

Goodwin, 457 U.S. at 382.  Like the Petitioner in Goodwin, "the only evidence [Petitioner] is able to marshal in support of his evidence of vindictiveness is that the additional charge was brought at a point in time after his exercise of a protected legal

right." Id. at 382, n.15.   "[T]he mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unwarranted." Id. at 382-83.

Notwithstanding that the state attorney was within his rights to amend the information as he did, counsel actually filed a motion to dismiss the amended complaint on the same bases that Petitioner set forth in his Rule 3.850 motion (Doc. 13-2 at 55).   Given that Florida and United States Supreme Court case law definitely defeats a claim of prosecutorial misconduct, counsel was not constitutionally ineffective for deciding against making further argument on this point.   Claim Four is denied pursuant to 28 U.S.C. § 2254(d).

### D.   Claim Six

Petitioner asserts that defense counsel was ineffective for failing to "preclude hearsay and contradictory statements by adequate impeachment of state's star witness[.]" (Doc. 1 at 4). Petitioner does not elaborate on this claim nor does he identify the "star witness" whom counsel failed to adequately cross examine. Petitioner did raise a similar claim in his Rule 3.850 motion which the post-conviction court addressed in pertinent part as follows:

> Defendant asserts that trial counsel was ineffective for failing to impeach witness Nils Sansmark.   In his motion, Defendant raises three issues with regard to Mr. Sansmark's testimony at trial.   First, Defendant claims that trial counsel was

ineffective for failing to impeach Mr.
Sansmark's testimony at trial with his
conflicting initial statement to law
enforcement. However, the record reflects
that trial counsel did question Mr. Sansmark
regarding the discrepancies between the
statement he gave law enforcement and his
testimony at trial. Accordingly, this claim
is without merit. Second, Defendant claims
that trial counsel was ineffective for failing
to impeach Mr. Sansmark's testimony with
conflicting statements made by other
witnesses. A witness can be impeached by his
or her own prior inconsistent statements, but
not by the prior inconsistent statements of
other witnesses. Accordingly, Defendant's
second claim is without merit. Lastly,
Defendant claims that trial counsel was
ineffective for failing to impeach Mr.
Sansmark's testimony at trial because he
alleges that Mr. Sansmark gave contradictory
statements to law enforcement. The allegedly
contradictory statements given to law
enforcement are unrelated to trial court
testimony given by Mr. Sansmark at trial.
Therefore, this claim is without merit.

. . .

Defendant asserts that trial counsel was
ineffective for failing to impeach witness
Sharon Range. In his motion, Defendant raises
two issues with regard to Ms. Ranges's
testimony at trial. First, Defendant claims
that trial counsel was ineffective for failing
to impeach Ms. Range's testimony at trial with
her conflicting statement to law enforcement
officers regarding the relationship between
the victim and Defendant. Defendant alleges
that in statements offered to law enforcement
officers, Ms. Range described the victim and
Defendant as friends, but at trial, she
testified that the two were only
acquaintances. According to the record,
trial counsel for Defendant impeached Ms.
Range's testimony regarding the victim and
Defendant's relationship and how often she
told police that the two were friends.

Accordingly, the record conclusively refutes this claim.   Second, Defendant claims that trial counsel was ineffective for failing to impeach Ms. Range's testimony at trial with her conflicting statements that:

> Contradicts herself again, when she first testifies that the decedent was so crippled that he was on disability [compensation], and had severe mobility problems, because his artificial hip was 'coming out,' and he could hardly walk, but, in her later testimony confirms that he was playing 'golf, baseball, tennis and bowling,' as well as house painting.

According to the record, trial counsel for Defendant questioned Ms. Range regarding how often the victim and Defendant played golf together, the fact that the victim was on disability, worked as a handyman, and regarding the hip replacement surgery.   The record conclusively refutes this claim, as well.

. . .

Defendant asserts that trial counsel was ineffective for failing to impeach witness Robert Hewitt with the testimony of Robin Randall or Marty Murphy.   The Court notes that Defendant's motion is unclear as to whether he is asserting that trial counsel should have impeached Robin Randall, Mary Murphy, or Robert Hewitt; however, what is clear from Defendant's motion, is that he is asserting that trial counsel was ineffective for failing to impeach one or all three of these witnesses with prior inconsistent statements made by other witnesses and not prior inconsistent statements made by the witness specifically testifying.   A witness can be impeached by his or her own prior inconsistent statements, but not by the prior inconsistent statements of other witnesses.

(Doc. 13-5 at 15-16) (internal citations to the record omitted). The post-conviction court's denial of this claim was *per curiam* affirmed by Florida's Second DCA (Doc. 13-7 at 106). A review of the record supports the state court's conclusions.

### 1. Witnesses Robin Randall, Marty Murphy, and Robert Hewitt

The post-conviction court reasonably determined that defense counsel could not have used the statements of other witnesses to impeach the state's witnesses on cross examination.  Under Florida law, a witness may be impeached with his or her own prior inconsistent statements, but the Florida rules of evidence do not provide that a witness may be impeached with a prior statement from a different witnesses. See Fla. Stat. § 90.614.  To the extent Petitioner now argues that the post-conviction court unreasonably applied state law in reaching this conclusion, this Court is bound by the state courts' interpretation its own law. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").  Accordingly, any assertion by Petitioner that trial counsel was ineffective for failing to impeach a witness with a different witness' prior statement is without merit.

### 2. Witness Nils Sansmark

Petitioner's assertion that defense counsel did not impeach Witness Sansmark regarding the identity of the initial aggressor

in the altercation between Petitioner and the victim is equally
without merit.  Defense counsel thoroughly cross examined Sansmark
on this issue:

> COUNSEL:  So, it's your testimony back on
> August 28 of 2003 that Mike was the
> aggressor.  That's what you told
> the police officers, correct?
>
> WITNESS:  Yes.
>
> Q.  Two experienced – two detectives who
> took you in the back room after they
> realized you told them Mike was the
> aggressor, Wayne was ready to
> oblige.
>
> A.  That's what I said on tape.
>
> Q.  And now two years later you've come
> forward saying, oh, no, no, that's
> not what happened?  Is that your
> testimony?
>
> A.  It was the first time I saw the
> transcript and then heard the tape
> of what I said.
>
> Q.  And at no time did you contact the
> police; is that correct?
>
> A.  When?
>
> Q.  At any time in the past two years.
>
> A.  I spoke with one of the detectives
> about a year and a half ago.
>
> Q.  Okay.  And on numerous occasions,
> you've had an opportunity to meet
> with various State Attorneys on this
> case?
>
> A.  No.
>
> Q.  Or speak with them?

A.      No.

Q.      You've not been contacted at any
        time?

A.      One time they came and I came and
        spoke to the State Attorney.

Q.      You've received subpoenas in this
        case; is that correct?

A.      Yes.

Q.      But the first time bringing it to
        their attention is today in court
        after reading your statement?

A.      It was brought to my attention two
        days ago.

Q.      It was brought to your attention or
        you brought it to someone's
        attention?

A.      It was the first time I saw the
        transcript of what I said that
        night, and then I brought it to the
        State Attorney's Office attention
        that that was incorrect.

Q.      It was then –

A.      Two days ago.

Q.      It was then that you completely
        changed what you said, correct?

A.      No. I just changed the place where
        names are.

Q.      The names of your very good friend,
        Michael Range, and Mr. Travis, who
        you barely knew.

A.      Right.

(Doc. 13-5 at 91-93).  Accordingly, any complaint that counsel did not impeach Sansmark with his prior identification of the victim as the initial aggressor is without merit.

### 3. Witness Sharon Range

Petitioner asserts that Range contradicted her prior statement to the police in which she described the relationship between Petitioner and the victim as "friends" whereas at trial, she described them as "acquaintances" and "not friends." (Doc. 13-2 at 32) (emphasis in original).  However, Defense counsel did impeach Range on this issue, noting that she had told the police that Petitioner and the victim were friends on six different occasions. (Doc. 13-5 at 43-44).  Petitioner's assertion is without merit.

Finally, Petitioner asserts that Range made conflicting statements regarding the victim's level of physical impairment and that counsel should have impeached her on this issue.  In fact, counsel did:

> COUNSEL:   Good Afternoon, Mrs. Range.  You indicated that your husband had – he was on total disability, correct?
>
> RANGE:     Yes.
>
> Q.         But, in fact, that he engaged in playing golf two, three times a week?
>
> A.         Two or three times, yes, ma'am.

> Q.      And in fact he had played golf with
>         Mr. Travis on numerous occasions,
>         correct?
>
> A.      I'm not going to – I don't know if
>         it was numerous occasions.
>
> Q.      Okay.  And, in fact, your husband
>         also did some chores or handyman
>         work such as painting; isn't that
>         correct?
>
> A.      Yes.
>
> Q.      Okay.  And, in fact, your husband
>         also did some chores or handyman
>         work such as painting; isn't that
>         correct?
>
> A.      Yes.
>
> Q.      In fact, he would climb a ladder and
>         paint houses, and whatnot?
>
> A.      No.
>
> Q.      It's your testimony that he had not
>         climbed a ladder?
>
> A.      Not to my knowledge, no, ma'am.

(Doc. 13-5 at 39-40).  Any complaint that counsel failed to impeach

Range on her testimony regarding the level of her late husband's

physical impairment is without merit.

The state court reasonably concluded that the alleged

instances of defense counsel's deficient performance were either

contrary to Florida evidentiary law or completely refuted by the

record.  Claim Six is denied pursuant to 28 U.S.C. § 2254(d).

### E.   Claim Seven

Petitioner asserts that defense counsel was ineffective for failing to call certain witnesses at trial (Doc. 1 at 4). Specifically, he asserts that counsel should have called: (1) Robin Randall to testify that Petitioner and the victim were alone when the victim was stabbed and that Petitioner "appeared to be delirious, confused, and disoriented."; (2) Ethel Elmetta Travis to testify that the victim was a good dancer, that he had painted the Moose Lodge on a ladder, had laid floor tile in back of the bar area, was smoking crack, and was best friends with the victim; (3) Pamela Engelman to rebut Sharon Range's testimony that she and the victim had a loving marriage and to show that the victim did not have "high integrity"; (4) Marty Murphy to testify that Robert Hewitt did not witness the fight as he had testified; and (5) an audio recording expert to establish that the recording of Petitioner's confession to the police had been altered (Doc. 13-2 at 35-38).   Petitioner raised this claim in his Rule 3.850 motion, and the post-conviction court denied each allegation as without merit (Doc. 13-5 at 16-20).   The post-conviction court's rejection of this claim was *per curiam* affirmed by Florida's Second DCA (Doc. 13-7 at 106).

"Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [the court] will seldom, if ever, second guess." Waters v. Thomas, 46 F.3d

1506, 1512 (11th Cir. 1995); <u>Chandler v. United States</u>, 218 F.3d 1305, 1314 n. 14 (11th Cir. 2000)(describing the decision to call some witnesses and not others as "the epitome of a strategic decision" (quotation marks omitted)).  Moreover, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." <u>United States v. Ashimi</u>, 932 F.2d 643, 650 (7th Cir. 1991).  Even assuming that the deposition excerpts provided by Petitioner as attachments to his Rule 3.850 motion satisfy the <u>Ashimi</u> "actual testimony" requirement, Petitioner has not demonstrated that the state court's adjudication of this claim was contrary to <u>Strickland</u> or based upon an unreasonable determination of the facts.

### 1. Robin Randall and Marty Murphy

The post-conviction court noted that prospective witnesses Robin Randall and Marty Murphy had been investigated by counsel and that "Mr. Randall's statements to law enforcement and testimony given during a deposition do not conflict with the trial testimony of Robert Hewitt." (Doc. 13-5 at 17).  The court also concluded that Marty Murphy did not witness the altercation, and that there was no indication that Murphy "knew the whereabouts of Mr. Hewitt when the altercation between [Petitioner] and the victim

occurred." <u>Id.</u> at 19.   The court noted that "Hewitt never testified that he was a witness to the altercation between [Petitioner] and the victim outside of the Moose Lodge." <u>Id.</u>

Petitioner has not overcome the presumption of correctness due the post-conviction court's factual determination on these issues. <u>See</u> 28 U.S.C. § 2254(e)(1) (requiring a district court to presume that a state court's factual determination of a factual issue is correct unless the habeas petitioner rebuts the presumption with clear and convincing evidence).   Indeed, a review of the putative witness "testimony" offered by Petitioner shows that Randall only stated that he had not "noticed" anybody else in the area where Petitioner and the victim were lying, and that "[e]verybody else was either standing beside us or coming in or out." (Doc. 13-2 at 100).   Murphy testified that he did not witness the altercation between Petitioner and the victim, and that when he was "out with Bob Hewitt was when Mike was laying in front of the Moose, and that's when I was outside with Bob." <u>Id.</u> at 100. Murphy's testimony would not have contradicted any relevant testimony from Hewitt regarding the fight.   Given that Petitioner's factual assertions regarding these witnesses are not supported by the record, reasonable trial counsel could have decided against calling Randall or Murphy as witnesses.

**2.   Ethel Elmetta Travis and Pamela Engelman**

The post-conviction determined that Petitioner's assertions regarding Ethel Elmetta Travis' and Pamela Engelman's testimony were without merit because these witness' testimony would have either been inadmissible or merely cumulative to the testimony of other witnesses:

> The proposed testimony that Ms. Travis would have offered as alleged by Defendant regarding the victim's relationship with Pamela Engelman, as well as the victim's alleged narcotics usage, would have been impermissible character evidence. § 90.404 Fla. Stat. (2003). Furthermore, the proposed testimony regarding the victim's alleged narcotics usage would have been inadmissible hearsay. *See* Defendant's Exhibit "F" page 54 (Ms. Travis claims that she only heard a rumor regarding the victim's use of crack, but did not have personal knowledge). The testimony regarding the victim's propensity to play golf and other sports was provided at trial by the victim's wife. The victim's wife also testified that the victim was a handyman and did work such as painting. Accordingly, the alleged testimony proposed by Defendant that Ms. Travis would have given at trial would have been corresponding and not contradictory.

> . . .

> The proposed testimony that Ms. Engelman would have offered as alleged by Defendant regarding the victim's relationship with Ms. Engelman, as well as the victim's alleged marital problems, would have been impermissible character evidence. § 90.404, Fla. Stat. (2003).

(Doc. 13-5 at 18, 18-19) (internal citations to the record omitted). Florida's Second DCA *per curiam* affirmed (Doc. 13-7 at 106).

Given that the proposed testimony from Witness Ethel Elmetta Travis would have been inadmissible under Florida law or was merely cumulative to evidence offered by other witnesses, reasonable defense counsel could have decided against calling Travis as a defense witness.  Likewise, Petitioner cannot show how he suffered prejudice from counsel's decision not to offer inadmissible character evidence about the victim's lack of integrity or unhappy marriage through the testimony of Pamela Engelman.

### 3.   Audio-recording forensic expert

Finally, Petitioner asserts that an unnamed "audio-recording forensic expert"

> would have established that the Defendant actually stated (in his police interview) that "when he came to, if he had a knife, he threw it aside," which was altered to state "Defendant did have a knife." (Emphasis added).  The Defendant never admitted to having a knife at that time, which gave the jury the wrong impression, further ensuring Defendant's conviction of the higher charge rather than the lesser charge, or even an acquittal, which was most appropriate.

(Doc 13-2 at 38).  The post-conviction court denied the claim, noting that, even if Petitioner's statement was presumed true, he could not show prejudice (Doc. 13-5 at 20).  Florida's Second DCA *per curiam* affirmed (Doc. 13-7 at 106).

This Court also concludes that Petitioner cannot demonstrate prejudice from counsel's alleged failure.  To establish prejudice, Petitioner must demonstrate a reasonable probability that, but for

counsel's deficient performance, the result of his trial would have been different. United States v. Greer, 440 F.3d 1267, 1272 (11th Cir. 2006). Petitioner has not provided evidence, in the form of an affidavit or otherwise, that an "audio-recording forensic expert" would have testified as he now describes. Self-serving speculation about potential witness testimony will not support a claim of ineffective assistance of counsel. See Ashimi, 932 F.2d at 650. Because Petitioner fails to proffer any expert testimony showing that an audio recording was altered, he fails to demonstrate a reasonable probability that, but for counsel's failure to call expert witnesses at trial, the result of the trial would have been different.

Moreover, as noted by the post-conviction court, Petitioner's current assertion that he never told the police that he had a knife is refuted by the record. Petitioner made numerous statements to police regarding his possession of a knife. Petitioner told the police that after the victim punched him:

> PETITIONER:    I pulled out my knife and I said, 'Mike, don't do this no more, stay the fuck away from me, get out of here. It's my problem, it's not your problem'; and he come at me again and I stabbed him."
>
> DETECTIVE:    Okay.
>
> PETITIONER:    And then he tried to hit me again and I'm sure I stabbed him again.

| DETECTIVE: | Okay. |
|---|---|
| PETITIONER: | He tried two or three times to come at me and I know that I stabbed him two or three times. |
| DETECTIVE: | Okay. |
| PETITIONER: | And after two or three times, I said, "you go on." And then I knew I seen him fall and then I knew that I was probably in some deep trouble and I took off running towards my house; and somewhere between the Moose and my house, I still had the knife in my hand, and I know that I probably ran for a mile or whatever, and then I realized I still had the knife in my hand.  I threw it aside. |

(Doc. 1305 at 154-55).  Petitioner later described the knife as a

normal pocketknife and a "long switchblade." Id. at 155.  He told

the police that he carried a knife because he needed a knife for

work. Id. at 164.   He repeated his assertion that he stabbed the

victim after he (the victim) hit him in the mouth, and that he

used the knife because the victim kept "coming" at him. Id. at

162, 164.   He stated that he didn't know why he pulled the knife

"other than the fact that somewhere in my mind, somewhere in my

thinking I thought you're not going to whip my ass, you're not

going to whip me because this really isn't your damn problem, and

why we're out here is another thing that I don't understand." Id.

at 165.   He told the police that he was sorry that the stabbing

occurred, "sorry to God I stabbed him. I stabbed him." Id. at 168.

Given Petitioner's repeated confessions to the police regarding the knife, the post-conviction court reasonably concluded that he could not demonstrate prejudice from counsel's failure to hire an audio-recording forensics expert.

Petitioner has not satisfied the prejudice prong of the Strickland ineffectiveness test, and Claim Seven is denied pursuant to 28 U.S.C. § 2254(d). See Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong . . . or vice versa.").

**F.  Claim Eight**

Petitioner asserts that counsel was ineffective for failing to file a motion to dismiss the charges against him on the ground that the information was not based on the testimony of a material witness (Doc. 1 at 4). Petitioner raised this issue in his Rule 3.850 motion, and the post-conviction court determined that the claim was without merit because "no objection to an information on the ground that it is not signed or verified can be entertained 'after the defendant pleads to the merits.'" (Doc. 13-5 at 20) (citing Logan v. State, 1 So. 3d 1253 (Fla. 4th DCA 2009)). Florida's Second DCA per curiam affirmed (Doc. 13-7 at 106).

Petitioner does not identify any defect in the state court's adjudication of this claim. Rule 3.140(g) of the Florida Rules

of Criminal Procedure requires that the state attorney or a designated assistant state attorney sign a felony information under oath affirming good faith in instituting the prosecution and certifying the receipt of testimony under oath from the material witness or witnesses to the offense. The amended information in Petitioner's case charges second degree murder under Florida Statute § 782.04(2) and aggravated assault with a deadly weapon under Florida Statute § 784.021 (Doc. 13-5 at 26-27). The information includes the signature and oath of an assistant state attorney required under Rule 3.140(g). Id. at 27. Consequently, counsel had no basis on which to object to the information. See Jones v. Barnes, 463 U.S. 745, 751 (1983) (trial counsel has no duty to raise a frivolous claim). Moreover, Petitioner cannot show prejudice because even had counsel filed a motion to dismiss a defective information, it would not have prohibited further proceedings against him in connection with the charges because the state would merely have proceeded upon a second amended information. See Alba v. State, 541 So. 2d 747, 748 (Fla. 3d DCA 1989) ("Clearly, the fact that the defendant was tried upon an unsworn Information does not rise to such a level of error which would entitle the defendant to a complete release from the charges brought against him.").

Claim Eight fails to satisfy either prong of Strickland, and is denied pursuant to 28 U.S.C. § 2254(d).

G.   **Claim Nine**

Petitioner asserts that trial counsel was ineffective for failing to request a competency hearing and for not considering an insanity defense (Doc. 1 at 5).   Petitioner raised this issue in his amended Rule 3.850 motion, in which he asserted that the evidence showed that he was confused, dazed, and "out of it" after the stabbing and that counsel "had a duty to investigate all evidence" which showed that he may not have been competent (Doc. 13-6 at 31-32). Petitioner also asserted that he suffered from the disease of alcoholism, and had counsel pursued an insanity defense, "the jury would have reached a Manslaughter verdict." Id. at 33. The post-conviction court denied the claim:

> In his initial motion, Defendant alluded to the testimony provided by various witnesses that indicate that Defendant appeared to be dazed and confused following the criminal incident.  However, as the Court noted in its prior order, a review of the entire file and transcript of the trial did not indicate that Defendant was either incompetent or insane. Defendant's initial motion did not allege that he failed to understand the nature of the proceedings, the role of the parties, or that Defendant's understanding of his actions [was] affected by any mental health condition. Because Defendant's original claim in Ground 7 offered no more than conclusory statements, did not point to any facts which supported the claim, nor did he demonstrate a deficiency in performance that prejudiced the defense, Defendant was afforded the opportunity to amend his claim. Wilson v. State, 531 So. 2d 1012, 1013 (Fla. 2d DCA 1988); Teffeteller v. Dugger, 734 So. 2d 1009, 1016 (Fla. 1999).  In Defendant's amended Ground 7, he again offers no more than conclusory statements and does

> not point to any facts which identify that
> Defendant was incompetent or insane. In his
> amended motion, Defendant claims that he "had
> become a heavy drinker, and succumbed to the
> disease of alcoholism, which clouded his
> judgment" and "just prior to the fight, he had
> only two (2) drinks, those drinks, combined
> with his disease of alcoholism and the fact
> that the alleged victim had banged Defendant's
> head against the concrete, caused Defendant to
> be temporarily insane . . ." Notably,
> voluntary intoxication is neither a defense to
> any offense proscribed by law nor is it
> admissible to show that a defendant was insane
> at the time of the offense. § 775.051, Fla.
> Stat. (2003). Accordingly, Defendant's
> claims in Ground 7 are without merit.

(Doc. 13-7 at 4-5). The post-conviction court's denial of this claim was *per curiam* affirmed by Florida's Second District Court of Appeal (Doc. 13-7 at 106).

In <u>Futch v. Dugger</u>, the Eleventh Circuit Court of Appeals considered an ineffective assistance claim regarding trial counsel's failure to determine a petitioner's competency to stand trial. 874 F.2d 1483, 1486 (11th Cir. 1989). The court stated that "[i]n order to demonstrate prejudice from counsel's failure to investigate his competency, [a] petitioner has to show that there exists 'at least a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial.'" <u>Id.</u> at 1487 (quoting <u>Alexander v. Dugger</u>, 841 F.2d 371, 375 (11th Cir. 1988)). In the instant case, Petitioner has presented no evidence, other than his own self-serving speculation, that additional psychological testing would have

shown that he was incompetent to stand trial.[7]   Accordingly, he cannot demonstrate prejudice from counsel's failure to move for a competency hearing.

Likewise, as noted by the post-conviction court, voluntary intoxication is not a defense to the general intent crime of second degree murder.   See Gray v. State, 731 So. 2d 816, 817 (Fla. 5th DCA 1999) (voluntary intoxication is not a defense to a general intent crime); Kiley v. State, 860 So. 2d 509 (Fla. 4th DCA 2003) (voluntary intoxication is no longer a defense to second degree murder).   Accordingly, counsel's performance was not deficient for failing to argue that Petitioner's use of alcohol, combined with his alcoholism, rendered him temporarily insane at the time of the stabbing.

Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in denying Claim Nine.   The claim is denied pursuant to 28 U.S.C. § 2254(d).

---

[7] Petitioner alleged in his Rule 3.850 motion that "Defense Counsel did motion the Court for a mental health evaluation, and Defendant did see a mental health expert, however, counsel failed to follow-up, to ensure that a competence hearing was held, with Defendant's presence, to allow for cross-examination, argument, and objections, by counsel, and final determination by the Court." (Doc. 13-6 at 33) (emphasis in original). Indeed, Petitioner has provided a copy of the motion and the trial court's order appointing an expert (Doc. 29 at 9-10). Petitioner does not assert that the mental health evaluation suggested that he was incompetent to proceed to trial, nor does he provide a copy of the mental health report.

## H.   Claim Ten

Petitioner claims that the cumulative effect of trial counsel's errors deprived him of a fair trial (Doc. 1 at 8).  This Court need not determine whether, under the current state of Supreme Court precedent, cumulative error claims reviewed through the lens of AEDPA can ever succeed in showing that the state court's adjudication on the merits was contrary to or an unreasonable application of clearly established federal law. Petitioner has not shown an error of constitutional dimension with respect to any federal habeas claim. Therefore, he cannot show that the cumulative effect of the alleged errors deprived him of fundamental fairness in the state criminal proceedings. See Morris v. Sec'y Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012) (refusing to decide whether post-AEDPA claims of cumulative error may ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law, but holding that petitioner's claim of cumulative error was without merit because none of his individual claims of error or prejudice had any merit); Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 565 (11th Cir. 2009) (noting absence of Supreme Court precedent applying cumulative error doctrine to claims of ineffective assistance of counsel, but holding that the petitioner's cumulative error argument lacked merit because he did not establish prejudice or the collective effect of counsel's error

on the trial). Petitioner is not entitled to relief on claim eleven.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV. Certificate of Appealability[8]

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El, 537 U.S. at 335-36. Petitioner has not made the requisite showing in these circumstances.

---

[8] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Id. As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.    The Florida Attorney General is **DISMISSED** as a named Respondent.

2.    Claims One and Three of the 28 U.S.C. § 2254 petition for habeas corpus relief filed by Dorris Wayne Travis (Doc. 1) are **DISMISSED;** the remaining claims are **DENIED.**

3.    Petitioner is **DENIED** a certificate of appealability.

4.    The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this ___12th___ day of May, 2015.

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Doris Wayne Travis
Counsel of Record